522 So.2d 1018 (1988)
Harry Louis ECKEL, Appellant,
v.
Anita Karla ECKEL, Appellee.
No. 87-485.
District Court of Appeal of Florida, First District.
March 30, 1988.
*1019 Dennis A. Barbarisi, Ft. Walton Beach, for appellant.
John P. Townsend of Chesser, Wingard, Barr & Townsend, Ft. Walton Beach, for appellee.
ERVIN, Judge.
Harry Louis Eckel appeals an order of the circuit court dismissing his petition for dissolution of marriage for lack of personal jurisdiction. Concluding that Mr. Eckel has satisfied the residency requirements of Section 61.021, Florida Statutes, we reverse the order of dismissal.
Appellant and his wife were married on May 18, 1981, in Queens, New York. The parties resided in West Germany until May 1983, when the wife left West Germany and moved to Montgomery, Alabama. Appellant's dissolution petition, filed in Okaloosa County, Florida, alleges that he is currently domiciled in Okaloosa County and has been a resident of Florida for at least six months before filing his petition. In opposition, the wife's motion to dismiss the petition states that the court lacks jurisdiction over the parties, because the husband "has not been a physical resident of the State of Florida for at least six months next prior to the filing of the Petition for Dissolution of Marriage."
A hearing was held on the motion to dismiss, at which the wife specially appeared, contesting the court's jurisdiction over the parties, testifying that she has never lived in the state of Florida. The husband, on the other hand, stated that he had lived in Florida from 1964 to 1971, while a member of the United States Air Force; that he bought a house in Okaloosa County in 1970 and still maintains an ownership interest in it; that he filed a notice of existing domicil in Okaloosa County, Florida on February 1, 1970; that he was stationed in West Germany while a member of the Air Force from 1971 until 1975; that in 1975 he retired from the military at Eglin Air Force Base and then lived in Florida for six months, and was thereafter transferred to West Germany as a civilian employee of the United States Department of Defense, where he has resided in such capacity until the filing of his petition. Despite his prolonged absence from Florida, he has nonetheless maintained an account with the Eglin Federal Credit Union, has a current Florida driver's license, and has voted in Florida since 1968.
*1020 Section 61.021, Florida Statutes, requires, in order for one to obtain a dissolution of marriage in Florida, that "one of the parties to the marriage must reside six months in the state before the filing of the petition." The six-month residency requisite has been construed "to mean the party filing the proceeding must reside in this state for the six months next preceding the filing of the petition." Gillman v. Gillman, 413 So.2d 412, 413 (Fla. 4th DCA 1982) (e.s.). Florida courts have recognized an exception to the statutory residency demand as to members of the military, allowing them to seek divorce in Florida without proving their actual presence in the state during the six-month statutory period prior to the filing of their petitions of dissolution. See Cruickshank v. Cruickshank, 420 So.2d 914 (Fla. 1st DCA 1982); Sheppard v. Sheppard, 286 So.2d 37 (Fla. 1st DCA 1973). In Cruickshank, the husband, a colonel in the Air Force, was assigned to Eglin Air Force Base in Okaloosa County, Florida in 1966, where the family purchased a home, the husband registered to vote, registered a car, and opened an account with the Eglin Federal Credit Union. He was thereafter transferred to Scott Air Force Base in Illinois, where the parties also bought a home; finally in March 1982, he was assigned to Texas, leaving the wife in Illinois. This court, after observing that the husband still owned a home in Ft. Walton Beach, voted in Okaloosa County by absentee ballot, possessed a Florida driver's license, and maintained an account at the Eglin Credit Union, announced the following rule: "[T]he test of residency in Florida is physical presence in Florida and the concurrent intent to be a permanent resident." Cruickshank, 420 So.2d at 915 (citation omitted) (e.s.). The court concluded that the husband's physical presence in Florida from 1966 to 1971, coupled with facts showing an intent to remain, demonstrated that he had met the statutory residency requirement.
Sheppard contains a similar fact pattern, involving a husband who had never resided out of Florida since moving there at age four, except during tours of military duty. He was determined to have maintained a permanent residence in Florida, despite extended tours outside the state. Contrast Campbell v. Campbell, 57 So.2d 34 (Fla. 1952) (statutory residency test not met, notwithstanding that a military officer filed an affidavit of intention to make Florida his permanent home, but had never lived thethen required 90 days in Florida, because the statute compelled actual residency). In the instant case, appellant lived in Florida from 1964 to 1971, and for six months in 1975, clearly meeting the requirement of actual residency.
We can perceive of no policy rationale excepting only members of the military from the statutory requisite of actual residency for the next six months preceding the filing of a dissolution petition. In our judgment, the residency test demanded for members of the military is no greater than that required for employees of the government who are forced by the demands of their employment to take up temporary residence elsewhere than their primary choice of domicil, and in neither case should a bar be erected once such persons establish a bona fide legal domicil within the state. See 24 Am.Jur.2d, Divorce and Separation, § 247 (1983), stating:
[T]he prevailing view is that an extended absence from the divorce state for a period of time in excess of the statutory waiting period will not prevent the plaintiff from being deemed a resident for divorce purposes where it is clear that he has a bona fide legal domicil within the state and that he has not acquired a new one elsewhere. This rule is particularly applicable where the domiciliary is a soldier or sailor who is absent from the jurisdiction under government orders, or he is employed by the United States Government and is required to work outside the divorce state.

(emphasis supplied)
Nor should the length of a person's absence outside the state of his or her legal domicil preclude the satisfaction of that state's residency requirement. As observed in 24 Am.Jur.2d Divorce and Separation § 248:

*1021 Persons who hold public office or employment are frequently required to serve in the District of Columbia or at some place far from their legal residence, and to remain there for several years at a time, except for vacations, which they may spend at their legal residence or elsewhere. They do not lose their legal residence or domicil by reason of such absence, if they intend to return.
For example, in Gasque v. Gasque, 246 S.C. 423, 143 S.E.2d 811 (1965), the husband, a native of South Carolina, was employed by the United States Government in Washington, D.C. for approximately 14 years, and for most of that time had lived with his family in the District of Columbia or its environs. The Supreme Court of South Carolina, after determining that the husband had continuously maintained his legal residence in South Carolina, and that his absence from that state was solely because of his status as an employee of the United States Government, held that the husband was entitled to maintain his suit for divorce in South Carolina. See also Annotation, Nature and Location of One's Business or Calling as Element in Determining Domicil in Divorce Cases, 36 A.L.R.2d 756 (1954).
Appellee argues that the above authority is not controlling  rather the case at bar is governed by Gordon v. Gordon, 369 So.2d 421 (Fla. 3d DCA 1979), holding that a wife, a Florida resident at the time of her marriage, lost her Florida residency once she accompanied her serviceman/husband outside the state of Florida. The Third District, observing that there was no showing that the husband had maintained residency in Florida, stated that the wife's residency was dependent upon that of her husband, and, in order to establish a different residency, "she must do so after the break-up of the marriage relationship." Id. at 423. We cannot accept the assumption that a husband and wife can only maintain different residencies following the disruption of their marriage. "[I]t would be `completely anachronistic' to hold that a wife could not obtain a domicile or residency different than that of her husband until the actual physical separation of the parties." Bowers v. Bowers, 287 So.2d 722, 724 (Fla. 1st DCA 1973), cert. discharged, 326 So.2d 172 (Fla. 1976). In Bowers, the wife's physical presence in Florida for three years, coupled with her intent to remain, was sufficient for her to meet the test of residency for divorce purposes, despite statements by her serviceman/husband that he never intended to make Florida his place of residence.
In the instant case, there is no showing that the husband maintained a legal residence anywhere other than in the state of Florida. Nor is there any showing that at any time since 1970, while he was a member of the military, or a civilian employee of the Defense Department, the husband evinced an intention to make any place other than Florida his legal residence. We therefore find no support, either in fact or law, undergirding the lower court's order of dismissal.
REVERSED.
SMITH, C.J., and NIMMONS, J., concur.