610 So.2d 42 (1992)
Rebecca LeBlanc DAY, Appellant,
v.
Paul LeBLANC, Appellee.
No. 92-01065.
District Court of Appeal of Florida, Second District.
December 4, 1992.
Rehearing Denied January 5, 1993.
Marilyn W. Peterson of Scruggs & Carmichael, P.A., Gainesville, for appellant.
*43 Robert J. Coleman, Fort Myers, for appellee.
RYDER, Acting Chief Judge.
Rebecca LeBlanc Day challenges an order modifying primary residential custody of the parties' seven-year-old daughter to the father, Paul LeBlanc. The trial judge erred in finding a substantial change of circumstances to support the change of primary residential custody. We reverse.
The parties' final judgment of dissolution of marriage based upon their property settlement agreement specified shared parental responsibility, subject to the wife being the primary residential parent. The father was afforded a liberal visitation schedule, and he split equally with the mother the child's non-day care time. The parties' agreement contemplated future residential moves outside of Lee County, but required written permission or court approval for a move out of state. The agreement made no provision for a visitation plan that addressed the child's eventual commencement of formal schooling. The parents have shared equally childrearing duties since their daughter's birth.
After the dissolution of marriage in March 1990, the mother remarried in June 1990, and the father remarried in December, 1990. In January 1991, the father informed the mother that he and his wife planned to acquire a new home. The mother reminded the father that she, too, would be moving in the near future.
During early 1991, the parents disagreed about the daughter's primary residence in the context of the coming school year when she was to commence kindergarten. The mother, a social worker and former school teacher, expressed the opinion that her education would be enhanced by spending every school night at the mother's residence in her school's neighborhood. The father disagreed and insisted that the child attend a magnet school free from county school zone requirements. They never agreed about the child's registration for any specific school. Later that spring, the mother and her husband investigated the possibility of a move to Gainesville, a move they perceived as an improvement, culturally, economically and vocationally.
Subsequently, the father filed a motion on March 4, 1991, for injunctive relief to enjoin the mother from removing the child from the jurisdiction of the court, and a motion to modify final judgment for nonremoval of the child from Lee County. He amended his motions on April 12, 1991 to request a modification of custody or primary physical residence to him. On April 18, 1991, the mother wrote a letter to the father confirming the decision to move to Gainesville and offering him a very liberal and substituted visitation plan. She then filed on April 23, 1991 a petition to modify final judgment for the purpose of determining a new visitation schedule in light of the move to Gainesville scheduled for May 1991.
Pursuant to court order, the father and the mother jointly selected two therapists to conduct an evaluation and to submit their report and recommendation as to visitation and custody. Both parents, the mother's expert psychologist and the daughter's day care owner also testified. The therapists concluded that both parents love their daughter very much, and neither parent is unfit or poses any physical, mental or emotional danger or abuse to the child. Both parents can provide a stable home. The child loves both parents and is a bright, happy and well-adjusted child. They recommended placement with the father because they concluded that Lee County afforded the child a more stable environment. The mother had changed jobs and moved somewhat more often than the father. Their report summarized their opinions regarding the factors set forth in section 61.13(3), Florida Statutes (1991). They concluded the substantial change in visitation was due to the mother's move to Gainesville. Their concern from day one was that the child was on the road a great deal on the weekends because the distance between Gainesville and Fort Myers is 230 miles. They viewed the mother's move as precipitating the problem.
The trial court's findings of fact focussed on the mother's move. Its analysis of the *44 six factors found in Hill v. Hill, 548 So.2d 705 (Fla. 3d DCA 1989), review denied, 560 So.2d 233 (Fla. 1990), caused it to conclude that the wife's move precipitated the entire dilemma, that the father had sufficiently established a substantial change of circumstances resulting from the mother's move, and that the best interests of the child would be promoted by designating him as the primary residential parent. This appeal followed.
Modification of custody is proper only if there is competent, substantial evidence showing a substantial or material change in the circumstances of the parties since the entry of the original order and that the welfare of the children would be promoted by a modification of the custody provision. Dobbins v. Dobbins, 584 So.2d 1113, 1114 (Fla. 1st DCA 1991), review denied, 598 So.2d 75 (Fla. 1992). The test used to resolve relocation dilemmas includes six elements found in Hill. They are:
1. Whether the move would be likely to improve the general quality of life for both the primary residential spouse and the children.
2. Whether the motive for seeking the move is for the express purpose of defeating visitation.
3. Whether the custodial parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements.
4. Whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child or children and the noncustodial parent.
5. Whether the cost of transportation is financially affordable by one or both of the parents.
6. Whether the move is in the best interest of the child. (This sixth requirement we believe is a generalized summary of the previous five.)
548 So.2d at 706.
The judge erred in finding that a substantial change of circumstances had occurred merely because of the move. A review of the record reveals that the six factors set forth in the Hill case were insufficiently established to justify a determination that the move was not in the child's best interests.
The trial court concluded that the mother had not satisfied the first element because she did not demonstrate any reason for her move other than her personal preference for Gainesville. To the contrary, it appears as though she and her husband were really trying to improve themselves vocationally and economically. She and her husband perceived that unique cultural and vocational opportunities existed in Gainesville. The mother had acquired a part-time position (now full-time) in her field with Shands Teaching Hospital. The court stressed the joint evaluators' conclusions that the travel required for visitation was detrimental to the child, and that the mother was less stable. There was no evidence presented to substantiate their conclusion that the travel was detrimental. The conclusion that the mother was less stable was based exclusively upon the fact that she had moved on one more occasion and had changed employment more often than the husband. There was no evidence that these changes had any adverse effect on the child or that she possessed an unstable personality. The parties' settlement agreement expressly contemplated a move within the state. The joint evaluators' testimony concerning stability is based upon the factor found in section 61.13(3)(d), "[t]he length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." This factor and the others utilized by the joint evaluators are required in an original determination of custody. In the instant case, that determination had already been made in the parties' settlement agreement that granted the mother primary residential custody.
The trial court concluded that the second factor favored the father as well because of the inference that the timing of the move suggested that it was intended to defeat the father's parental rights. This finding and the mother's insistence that the daughter stay with her during the 1991 Thanksgiving holiday because the parties' settlement agreement made that stipulation and her stepson's birthday party was *45 planned that weekend are the sole bases for the court's conclusion. Nothing in the record shows an actual motive to thwart visitation. In fact, the joint evaluators concluded that the mother never displayed a motive to impede the child's visitation with the father or otherwise impair their relationship. The mother provided extremely liberal visitation after the move to Gainesville and prior to the commencement of the school year.
The court did not address the third factor concerning the mother's likelihood to comply with any substitute visitation arrangements. However, the evidence does not support even the barest inference that she would fail to comply with substitute visitation.
The trial court again looked to the move in assessing the fourth factor. The court raised a strong concern about the mother's capability of fostering a continuing meaningful relationship because of her disregard for the damage caused by her move to the father/daughter relationship. The evidence simply does not support such a conclusion. Moreover, the mother has testified and conducted herself in a manner that supports the conclusion that she will be liberal in allowing visitation.
The court relied upon the joint evaluators' testimony concerning the mother's finances and her expert's testimony that she had not been fully reimbursed to conclude that the cost of transportation is not financially affordable by her. Regardless of the child's residence, she must share the transportation costs. The record does not show that she had not fully shared the expenses in the past. We reject the court's conclusion concerning this fifth factor.
The sixth factor, whether the move is in the best interests of the child, is a generalized summary of the previous five. The trial court relied on the joint evaluators' opinion in finding that it is in the best interests of the child that the father be awarded the primary residential custody of the child. However, they did not evaluate the Hill factors. Instead, they evaluated the factors concerning an original determination of child custody. Thus, their conclusion is not a summary of the first five Hill factors. We disagree and conclude that there is more than enough evidence to support the conclusion that the move is in the best interests of the child.
A move may constitute a substantial change of circumstances if the distance is far and the visitation of the other parent will be subject to significant interference as a result. Jones v. Vrba, 513 So.2d 1080 (Fla. 5th DCA 1987). However, the cases so holding involved distances far greater than the instant case. In Jones, a move from Florida to Washington, D.C. was held to be a sufficient change of circumstances. In Warren v. Warren, 475 So.2d 736 (Fla. 2d DCA 1985), the trial court's approval of a move from Florida to Michigan was reversed. In the Hill case, the appellate court reversed the trial court's denial of a petition to relocate from Florida to Alabama. The case cited by the father, Bragassa v. Bragassa, 505 So.2d 556 (Fla. 3d DCA 1987), involved a greater distance from Dade County to North Florida. The Bragassa decision also addressed testimony that the children were more psychologically bonded to the father and that the trial court in appointing a special master lost its prerogative of substituting its judgment for that of the master's. In the instant case, the child is bonded equally to both parents.
A trial court has broad discretion in matters involving child custody, but it has less discretion in modifying custody provision of a final judgment than in making the original custody determination. Tallent v. Tallent, 440 So.2d 623 (Fla. 2d DCA 1983). The father has failed to show by competent, substantial evidence that the mother's move constitutes a substantial change of circumstances to justify a change in primary residential custody. We therefore reverse and remand for proceedings consistent with this opinion.
Reversed and remanded.
SCHOONOVER and THREADGILL, JJ., concur.