705 So.2d 665 (1998)
Dushan DRAKULICH, Appellant,
v.
Branka DRAKULICH, Appellee.
No. 97-167.
District Court of Appeal of Florida, Third District.
January 28, 1998.
Rehearing Denied March 4, 1998.
*666 Richard J. Aherne, Miami, for appellant.
Steven N. Abramowitz, Miami, for appellee.
Before COPE, SHEVIN and SORONDO, JJ.
COPE, Judge.
Dushan Drakulich ("father") appeals a final judgment of dissolution of marriage. We affirm in part and reverse in part.
The principal issue we address is the father's claim of error in the trial court's ruling that he must bear the entire expense of child visitation. The father's argument has merit.
The father and the appellee mother, Branka Drakulich, were married for seventeen months. The father was a resident of New York and the mother, a resident of Florida, where she had an established career as a business executive. The parties decided to make Florida the marital home. A son was born in 1993, who was three years old at the time of the final judgment.
After the parties' separation, the father returned to live in New York. Among the disputed issues between the parties were the visitation schedule and the financial responsibility for same.
The petition for dissolution of marriage was referred to a General Master for final hearing. For purposes of the child support guidelines, § 61.30, Fla. Stat. (1995), the Master determined that the mother's adjusted net income was $3111 per month and the father's, $2281 per month. A child support order was entered under the guidelines, the mother to be responsible for fifty-eight percent of the child support and the father, forty-two percent.
The Master ordered extended periods of visitation for the father during the summer, the Christmas school vacation, and spring break. The father was allowed to take the son to New York, or on vacation elsewhere. Since the child is too young to travel alone, the Master ordered that the father would personally pick the child up in Florida. At the conclusion of extended visitation, the mother was to pick the child up and return him to Florida.[1] The practical effect was that for the three annual extended visitations, each parent would bear one-half of the cost of transportation and one-half of the time commitment for what we will call "escort duty."[2]
The father filed exceptions to the Master's report, contending that he should be granted greater visitation. The mother filed exceptions, contending that the father should pay all of the transportation expense (even though she made more money than he did) and should perform all of the "escort duty."
The trial court denied the father's exceptions, granted the mother's exceptions, and entered a final judgment dissolving the marriage. The father has appealed.
The amount of visitation awarded to the father was reasonable under the circumstances. We find no error on this point.
We do, however, conclude that the trial court erred in its treatment of transportation expense and "escort duty." The mother argued in essence that since the father voluntarily moved to New York, it followed as a matter of law that he must pay all of the expenses of visitation and handle all of the "escort duty."
The trial court concluded that the mother's position was supported by the decisions in Chapoteau v. Chapoteau, 659 So.2d 1381 (Fla. 3d DCA 1995), and Buckingham v. Buckingham, 492 So.2d 858 (Fla. 1st DCA 1986). The court interpreted those cases to mean that the custodial parent can never be ordered to pay for visitation expenses of the *667 non-custodial parent because to do so would improperly erode child support benefits being received by the custodial parent. Respectfully, the trial court misapprehended those cases, both of which were decided based on the particular financial circumstances of the parties involved.
To put the issue into perspective, we begin with the proposition that "Florida has a strong policy of maintaining a close and continuing relationship between minor children and their divorced parents." Russenberger v. Russenberger, 669 So.2d 1044, 1045 (Fla.1996) (citation and footnote omitted). This is so because it is in the best interest of the minor child to have a close relationship with both parents. Thus, the goal is to have a visitation schedule which is both practical and financially feasible. The expense of transporting the minor child for visitation is a childrearing expense like any other.
The approach taken by the child support guidelines is that childrearing expenses should be shared by the parents in accordance with their financial means. See § 61.30, Fla. Stat. (1995). The guidelines statute provides the framework for arriving at a fair and equitable child support award. The expense of transporting the child for visitation must be evaluated within this framework. In the present case, the General Master found that the mother makes fiftyeight percent of the parties' combined incomes, and the father, forty-two percent. The General Master gave the parties fiftyfifty responsibility for transportation expense and "escort duty" for extended visitation.[3]
In considering the analogous issue of relocation by the custodial parent, the courts have said that one of the factors to be considered is "[w]hether the cost of transportation is financially affordable by one or both of the parents." Mize v. Mize, 621 So.2d 417, 420 (Fla.1993) (emphasis added); see also Hill v. Hill, 548 So.2d 705, 706 (Fla. 3d DCA 1989) (approved in Mize); DeCamp v. Hein, 541 So.2d 708, 711 (Fla. 4th DCA 1989). Here, the Master found that both parties had the ability to contribute on an equal basis toward the cost of transportation. That finding is supported by the record.
The trial court read Buckingham v. Buckingham, 492 So.2d 858 (Fla. 1st DCA 1986) to say that the custodial parent cannot be ordered to contribute to the transportation expense, because to do so would eat into the child support the custodial parent was receiving, thus diminishing the amount of money available to feed, clothe, and care for the child. The Buckingham court did so hold, but it was based on the facts of that case. In Buckingham, the mother was the custodial parent. She moved from Tallahassee to Orlando. The father was paying $450 per month in child support, even though the mother had documented child support expenses of $1200 per month. See id. at 860. The mother had no income other than child support.
The trial court ordered each party to bear one-half of the child's round-trip air fare for visitation in Tallahassee. See id. Under those particular facts, the effect of the order was to reduce the $450 per month child support amount, because the mother had no other income, and the mother had documented that the child support need already exceeded the amount which the father was paying. On that record, the District Court of Appeal concluded that the trial court's action "can be no other than a de facto reduction of the child support figure." Id. at 860. For that reason, the order pertaining to transportation expense was reversed.
In Chapoteau v. Chapoteau, 659 So.2d 1381 (Fla. 3d DCA 1995), also relied on by the trial court, the mother was a citizen of Germany. Upon separation, she took the three children to reside permanently in Germany. See id. at 1383. The father was gainfully *668 employed while the mother in Germany was on welfare. See id. at 1383-84. The trial court reduced the child support amount which the father otherwise owed to the mother because, in the trial court's view, the mother was at fault in moving to Germany contrary to the wishes of the father, and because the distance involved would cause the father to incur extraordinary travel expense. See id. at 1384 n. 2. In that context, this court said, "Nothing in the statutory scheme suggests that voluntary departure from the marital home or travel expenses associated with visitation constitute valid reasons for reducing a parent's child support obligation." Id. at 1384. That case, too, was decided on its particular facts. Neither Chapoteau nor Buckingham announces a rule of law that a custodial parent can never be required to share in the expense of transportation. See Day v. LeBlanc, 610 So.2d 42, 43, 45 (Fla. 2d DCA 1992) (gainfully employed mother, who was custodial parent, moved from Fort Myers to Gainesville; "Regardless of the child's residence, she must share the transportation costs for visitation.").
For the reasons stated, the mother's exception to this portion of the Master's recommendation should have been denied. It was permissible for the Master to require that the parties share equally in the transportation expense and the "escort duty."
The mother raised an additional exception which must now be considered. The Master's order allowed the father to take the child on vacation during any of the periods of extended visitation. Thus, since it was possible that the vacation would occur in a location away from New York, the Master's order stated, "The mother shall be responsible for the retrieval of the minor child wherever the child is and transporting the child back to the mother's home in Florida." Report of General Master at 7. The mother objected that in theory the father could take the child abroad or to some remote location,[4] thus subjecting her to unusual expense or inconvenience when the time comes for her to pick the child up. This exception became moot when the trial court ruled that the father would have to pay for all transportation and perform all "escort duty." In light of our reversal on the issue of shared expense and "escort duty," the trial court must now consider the exception regarding the location in which the child is to be picked up by the mother after extended visitation. We remand for further consideration of this issue. The court may, of course, return the issue to the General Master.
The father's remaining point on appeal is without merit.
Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.
NOTES
[1] The trial court also allowed two weekend visitations in Florida per year, to be entirely at the father's expense. On these weekend visitations, the father was solely responsible for picking up and returning the child.
[2] The order allows the parties to mutually agree on a third person for "escort duty."
[3] It appears that the General Master fashioned the "escort duty" provision in order to minimize the possibility of noncompliance with the visitation order. It is an unfortunate phenomenon observed in some family cases that the parent who is supposed to send the child on visitation fails to do so, or that the parent enjoying visitation fails to return the child when visitation is over. The Master's recommendation in this case attempted to avoid that problem by having the child picked up by the parent with whom the child would be staying thereafter. Thus, the father was to pick up the child at the start of each period of extended visitation, and the mother would pick the child up when it came time to return the child home.
[4] The record does not contain any indication that the husband actually contemplates such a step or has the financial means to do so.