765 So.2d 167 (2000)
Kenneth C. COONS, Jr., Appellant,
v.
Cathlyn Ann COONS, Appellee.
No. 1D99-2659.
District Court of Appeal of Florida, First District.
July 6, 2000.
*169 Keith A. McIver of Chase, Quinnell, McIver, Jackson & Marks, P.A., Pensacola, for Appellant.
Thomas R. Santurri of Thomas R. Santurri, P.A., Pensacola, for Appellee.

REVISED OPINION
BROWNING, J.
The nearly 10-year marriage of Kenneth C. Coons, Jr. (Appellant), and Cathlyn Ann Coons (Appellee) was dissolved pursuant to a May 1999 final judgment of dissolution of marriage. The parties have a 7-year-old daughter born of the marriage. In this direct appeal, Appellant challenges the final judgment on four grounds: 1) the circuit court lacked subject-matter jurisdiction because Appellee had not physically resided in Florida for six months prior to filing her petition for dissolution; 2) the trial court erred as a matter of law by calculating Appellee's interest in Appellant's military pension without making findings to explain and justify Appellee's sharing in increased retirement benefits from Appellant's post-dissolution promotions; 3) the court abused its discretion by awarding Appellee permanent alimony without affording Appellant a previously promised opportunity to present additional evidence on the subject; and 4) the court abused its discretion by requiring Appellant to bear the entire cost of visitation transportation expenses after Appellee relocated with the parties' minor child to California.
We affirm the final judgment generally, including the rulings exercising subject-matter jurisdiction, dissolving the marriage, and making Appellant responsible for the visitation transportation expenses. We reverse the final judgment only with respect to Appellant's other challenged rulings and remand with directions to the trial court to recalculate Appellee's share in Appellant's retirement benefits in accordance with the Florida equitable distribution statute, sections 61.075 & 61.076, Florida Statutes (1997), and related case law, and to make findings of fact; and to grant Appellant an opportunity to present evidence in opposition to the request for permanent alimony.
Appellant's first issue challenges the circuit court's subject-matter jurisdiction to hear the dissolution of marriage proceedings and to rule upon the matters at issue. Florida law sets forth a durational residence requirement:
61.021 Residence requirements. ___ To obtain a dissolution of marriage, one of the parties to the marriage must reside 6 months in the state before the filing of the petition.
§ 61.021, Fla. Stat. (1997). "Compliance with the section 61.021 residence requirement has long been held to be jurisdictional." Speigner v. Speigner, 621 So.2d 758, 759 (Fla. 1st DCA 1993). Another statute addresses the permissible methods of corroborating Florida residence:
61.052 Dissolution of marriage. ___
* * *
(2) Based on the evidence at the hearing, which evidence need not be corroborated except to establish that the residence requirements of s. 61.021 are met which may be corroborated by a valid Florida driver's license, a Florida voter's registration card, or the testimony or affidavit of a third party, the court shall dispose of the petition for dissolution of marriage when the petition is *170 based on the allegation that the marriage is irretrievably broken....
§ 61.052(2), Fla. Stat. (1997); see Orbe v. Orbe, 651 So.2d 1295 (Fla. 5th DCA 1995). The Supreme Court of Florida has explained why it is important to establish durational residency:
Florida has a compelling state interest in requiring a provable durational residency so that Florida may avoid intrusion upon the rights and interest of a sister state that might otherwise be paramount while still insuring the integrity of its judicial decrees as against future collateral attack in distant courts.
Caizza v. Caizza, 291 So.2d 569, 571 (Fla. 1974). As the complainant below, Appellee had the burden to prove that she met the durational residency requirement. See Fazio v. Fazio, 66 So.2d 297 (Fla.1953); Held v. Held, 151 Fla. 583, 10 So.2d 129 (1942). Whether or not a complainant is a Florida resident is a question of both fact and law to be settled or determined from the facts of each case. See Fowler v. Fowler, 156 Fla. 316, 22 So.2d 817 (1945).
Appellee filed her petition for dissolution on March 4, 1998, in Santa Rosa County. In the petition, Appellee alleged that she had been a resident of Florida for more than six months "except for absences required by the United States Military." In his answer, Appellant admitted Appellee's claim of Florida residency. However, his admission of Appellee's Florida residency could not substitute for proof of such residence. See Wise v. Wise, 310 So.2d 431 (Fla. 1st DCA 1975). At the dissolution hearing, Appellee produced her current, valid Florida driver's license as corroborating evidence of residency, without an objection. According to Florida Family Law Rule 12.140, defenses shall be governed by Florida Rule of Civil Procedure 1.140, subsection (h)(2) of which states that "[t]he defense of lack of jurisdiction of the subject matter may be raised at any time." See Parker v. Parker, 553 So.2d 309 (Fla. 1st DCA 1989). In fact, the issue of lack of subject-matter jurisdiction was not raised until after the entry of the final judgment when, in his motion and amended motion for rehearing, Appellant's new attorney alleged a lack of proof of either party's Florida residency.
We conclude that the record amply supports the lower court's conclusion that the Florida durational residency requirement was met. See Fernandez v. Fernandez, 632 So.2d 638 (Fla. 2d DCA 1994), approved, 648 So.2d 712 (Fla.1995). Appellant entered the armed forces in 1983. When the dissolution proceedings began, he was a major in the United States Air Force. During the marriage, Appellant's military responsibilities necessitated his family's moving with him among several Air Force bases within the United States and abroad. Appellant also participated in additional rotations in Europe and Japan, a 9-month tour in Operation Desert Storm, and numerous short-term military exercises away from his family while Appellee cared for the parties' child. Immediately after the parties' 1989 marriage in California, they moved to North Carolina and remained there until Appellant's transfer to Hurlburt Field, Florida, in 1991. Their daughter was born in Eglin Hospital in Florida. Appellant was transferred in 1994 to Panama, where the family remained until his June 1997 assignment to Maxwell Air Force Base in Alabama. In their financial affidavits, the parties listed among their assets a jointly owned home in Navarre, Santa Rosa County, which they rented out during their extended absence; and a credit card account and credit line through Eglin Federal Savings Bank. Appellant re-registered Appellee's 1991 Chevy Blazer in Florida and forwarded the tags to her after the separation. Appellee testified that the parties separated in March 1998, when they were getting ready to relocate to Hurlburt Field, Florida; she filed the petition for dissolution that same month. Indeed, by the date of the dissolution hearing, Appellant was *171 stationed again at Hurlburt Field, Florida.
Generally, "[t]he test of residency is physical presence in Florida and the concurrent intent to be a permanent resident." Cruickshank v. Cruickshank, 420 So.2d 914, 915 (Fla. 1st DCA 1982). However, we have held that the special circumstances affecting military persons warrant an exception to this "physical presence" rule:
Florida courts have recognized an exception to the statutory residency demand as to members of the military, allowing them to seek divorce in Florida without proving their actual presence in the state during the six-month period prior to the filing of their petitions of dissolution.
Eckel v. Eckel, 522 So.2d 1018, 1020 (Fla. 1st DCA 1988); see Cruickshank, 420 So.2d at 914; Sheppard v. Sheppard, 286 So.2d 37 (Fla. 1st DCA 1973). Although physical or actual presence in the state is excused under these circumstances, concurrent intent to be a permanent Florida resident remains an element of the residency test. See McIntyre v. McIntyre, 53 So.2d 824 (Fla.1951); Sheppard, 286 So.2d at 37 (husband, who never resided outside Florida during his adulthood except during tours of duty in U.S. Army and who made frequent visits to Florida while in armed forces, met statutory residency requirements, where he always listed his permanent residence in Florida and testified that he always intended Florida to be his permanent residence); Gipson v. Gipson, 151 Fla. 587, 10 So.2d 82 (1942) (en banc).
In Eckel, the Okaloosa County, Florida, trial court dismissed Mr. Eckel's petition for dissolution of marriage, where Mrs. Eckel alleged that he had not been a physical resident of the state during the six-month period prior to the filing of the petition and that she had never lived in Florida. We reversed that ruling on the grounds that Mr. Eckel had lived in Florida in 1964-71 while a member of the United States Air Force, that he had voted in Florida since 1968, that he had bought a house in Okaloosa County in 1970 and still maintained an ownership interest in it, that he had lived in Florida briefly in 1975 upon retiring from the military at Eglin Air Force Base, that he maintained an Eglin Federal Credit Union account, and that he had a current Florida driver's license. After his retirement, Mr. Eckel transferred as a civilian employee of the United States Department of Defense to West Germany, where he continued to reside in such capacity until the filing of his petition. Mr. Eckel alleged that he was currently domiciled in Okaloosa County and had been a Florida resident for at least six months before filing the petition. 522 So.2d at 1019. No showing was made either that Mr. Eckel maintained a legal residence anywhere other than in Florida, or that at anytime since 1970, while a member of the military or a civilian employee of the federal government, he evinced an intent to make any other place his legal residence. Under these circumstances, his prolonged absence from Florida did not defeat subject-matter jurisdiction in this state. Id. at 1020-21.
In Cruickshank, the husband was a colonel in the United States Air Force. The parties married in Massachusetts in 1961. Five years later, the husband was assigned to Eglin Air Force Base in Okaloosa County, Florida, and the parties purchased a home in Fort Walton Beach. The husband registered to vote in Florida, registered the family car in Florida, and opened an Eglin Federal Credit Union account. In 1971, the husband was assigned to a military base in Illinois, where the parties bought another home. The wife filed for legal separation in Illinois in 1981, after which the husband filed a petition for dissolution of marriage in Florida alleging his Florida residency. When the husband was assigned from Illinois to Texas in 1982, the wife remained in Illinois. The wife's challenge to Florida jurisdiction was unsuccessful, and she appealed the Florida final judgment of dissolution. We affirmed the *172 ruling on the grounds that the husband had been physically present in Florida in 1966-71, that he still owned the Florida residence, and that he had maintained an intent to be a permanent Florida resident. 420 So.2d at 915-16.
Opposing jurisdiction in the Florida court, Appellant asserts that Appellee never set foot in the State of Florida from when the family left for Panama in October 1994 until March 1998, when she drove from Montgomery, Alabama, to Pensacola, Florida, to meet with her attorney and to file her petition for dissolution, after which she returned to Alabama and subsequently moved to California. Appellant's argument ignores the special circumstances governing those members of the active armed forces or other employees of the federal government who "are forced by the demands of their employment to take up temporary residence elsewhere than their primary choice of domicil." Eckel, 522 So.2d at 1020. The families of these itinerant federal employees often are obligated to follow them to assignments outside Florida or even outside the United States, sometimes for extended periods of time. In that regard, Appellee testified that she was expected to accompany her former husband during his numerous transfers outside Florida, and that she did so to promote his career and to keep the family together. The record amply supports Appellee's testimony that during the requisite period immediately prior to filing her petition, she intended to return to Florida as a permanent resident. See Ogden v. Ogden, 159 Fla. 604, 33 So.2d 870, 873 (1947) (en banc) "[T]he best proof of one's domicile is where he says it is."). As in Sheppard and Eckel, there were some indicia of intent to maintain Florida residence, and no showing was made that Appellee maintained a permanent legal residence anywhere other than in Florida during the period in question. Given these circumstances, we see no logical or reasonable basis for distinguishing a member of the military's or the Department of Defense's career-related absences from Florida (which fit within the Eckel exception to the "physical presence" requirement) from the absences of the spouse of the military person or civilian federal employee who has been required and expected to accompany the military person or civilian federal employee and has contributed to career advancement. Cf. Gordon v. Gordon, 369 So.2d 421 (Fla. 3d DCA 1979). The record demonstrates that Appellant's military obligations were the sole reason for Appellee's living outside Florida during the marriage. Therefore, we affirm the trial court's determination that subject-matter jurisdiction was properly exercised in the case at bar. The fact that after filing the petition for dissolution Appellee moved to California with the parties' child did not divest the Florida trial court of jurisdiction. See Merritt v. Merritt, 369 So.2d 1005, 1006 (Fla. 2d DCA 1979).
Appellant's second issue challenges the manner in which the trial court calculated Appellee's share of Appellant's military retirement benefits. Appellee belatedly sought an equitable distribution of Appellant's military retirement benefit. Over Appellant's objection, the trial court reopened the case to allow the presentation of evidence on the subject. Appellant, who entered the armed forces in 1983, testified that he would have to complete 20 years for retirement. As an officer, he could refuse overseas duty, exercise a "seven day op," and "separate" from the armed services within six months. If that occurred, he would have accrued no value in retirement, and he might go into the reserves, where he could qualify for retirement at age 65.[1] He indicated that he probably would follow the latter course. Appellant testified that military raises typically occur at the beginning of the calendar year, and he expected another one in January 1999. He also expected an April 1999 pay increase based on over 16 years' in-putting. Without an objection from opposing *173 counsel, Appellant's counsel noted on the record that the starting and ending dates for that portion of Appellant's military retirement benefits for which Appellee is eligible are July 22, 1989 (date of marriage) and March 4, 1998 (filing date of petition for dissolution). Appellee asked for one half of that percentage of Appellant's total retirement, awarded on a percentage basis.
At the end of the dissolution hearing, the trial court orally found that Appellant had an unvested military retirement benefit, a portion of which he earned during the parties' marriage. The court also found that if this benefit ultimately vests, if Appellant leaves the military prior to vesting, or if some other benefit is paid to him as a consequence of the number of years of his military service, "the portion earned during the marriage should be a marital asset." As the parties offered no evidence of the present value of the benefit, no such finding was made by the court.
In its oral pronouncement, the court correctly distinguished between the marital and non-marital components of Appellant's military retirement benefits, consistent with the distinction made in the Florida equitable distribution statute. See §§ 61.075(5)(a)(4), Florida Statutes (1997) ("marital assets and liabilities" include "[a]ll vested and nonvested benefits, rights, and funds accrued during the marriage in retirement [and] pension ... plans and programs") & 61.076(1), Florida Statutes (1997) ("All vested and nonvested benefits, rights, and funds accrued during the marriage in retirement [and] pension... plans and programs are marital assets subject to equitable distribution"). However, in the written final judgment, the trial court made somewhat different findings, including the following:
The Wife shall receive one half of the military retirement benefits earned by the Husband or in the alternative credit towards military benefits earned by the Husband if he should, if [sic] fact, vest in a military retirement benefit, as an additional alternative, one half of any other benefit that may be paid to the Husband as a result of separation from the military prior to vesting in the military retirement benefit. The Wife's portion of the military retirement shall be calculated as one half of 8.67 [the number of years the parties were married] divided by the Husband's total number of years of service credited towards military retirement or towards any other form of separation benefit. The Husband shall be obligated to notify the Wife of his separation from the military or his retirement upon separation from the military or retirement.
That is, the written judgment fails to distinguish clearly between the amounts that accrued during the marriage and the non-marital sums. Without supporting findings of fact, this omission is error as a matter of law and requires reversal of the distribution of the military retirement benefits. See Boyett v. Boyett, 703 So.2d 451 (Fla.1997) (in accordance with definition of marital assets in § 61.075(5)(a), Fla. Stat. (1993), valuation of vested retirement plan could not include any contributions made after the original judgment of dissolution); Olsen v. Keefer, 714 So.2d 1165 (Fla. 1st DCA 1998); Salazar v. Salazar, 583 So.2d 797 (Fla. 1st DCA 1991). Absent the entry and filing of a stipulation or other agreement in a contested dissolution action, the equitable distribution statute requires the trial court to make specific written factual findings to support the distribution of marital assets or marital liabilities, whether equal or unequal. See § 61.075(3), Fla. Stat. (1997). The findings must be sufficient to advise the parties and the reviewing court of the rationale underlying the distribution. Given the apparent material inconsistency between the oral pronouncements and the written final judgment, we remand for a clarification with sufficient findings to support and explain the retirement distribution. See Leonard v. Leonard, 613 So.2d 1339, 1340 (Fla. 3d DCA 1993); Meyer v. *174 Meyer, 525 So.2d 462 (Fla. 4th DCA 1988). If, indeed, the trial court intended to calculate Appellee's interest in Appellant's military pension without excluding extramarital benefits, then findings to support such distribution are necessary. See § 61.075(3), (5)(a)(4), & (6), Fla. Stat. (1997).
Appellant's third issue asserts error in the trial court's award of permanent alimony to Appellee without affording Appellant a promised opportunity to present evidence relating to Appellee's entitlement to permanent alimony and the amount, if any. Having reviewed the pleadings and the transcript of the dissolution hearing, we conclude that Appellant's counsel rightfully claimed surprise and lack of notice regarding any discussion of Appellee's physical and mental conditions, on which her request for permanent alimony was based, and made proper objections sufficient to preserve the issue. The trial court characterized the subject of Appellee's medical condition and her ongoing need for treatment as a significant, substantial issue. Although Appellee asked for only a token sum for permanent alimony, it was noted that the long-term consequences of such an award could become more significant if her medical condition worsens or results in higher costs of medical examinations or treatment. At several points in the proceedings below, the court announced its view that the issue should be considered on the merits rather than given short shrift. Certain statements made by the court justified Appellant's expectation that he would have an opportunity to investigate the matter further and to present additional evidenceeither through live testimony or interrogatorieson the subject prior to any final ruling awarding permanent alimony. Inexplicably, a short time after the dissolution hearing, the court announced its findings in the case over the telephone and issued a written final judgment without addressing the unresolved evidentiary question. Permanent alimony was awarded in the amount of $10.00 a month, with no opportunity given for the parties to present additional evidence on the subject. We reverse the permanent alimony award and remand with instructions to allow the presentation of additional evidence.
In his fourth and final issue, Appellant contends that the trial court abused its discretion by making him entirely responsible for his and the parties' child's visitation transportation expenses. At the time of the final judgment, Appellee and the child resided in the vicinity of San Diego, California. Appellant misplaces his reliance upon the factually distinguishable case of Drakulich v. Drakulich, 705 So.2d 665 (Fla. 3d DCA 1998), in which the district court found permissible the requirement that the parties share equally in the Florida-to-New York visitation transportation expenses. In that case, the parents' incomes were much closer than the instant parties' incomes. See id. at 666. As "[t]he expense of transporting the minor child for visitation is a childrearing expense like any other," such expenses "should be shared by the parents in accordance with their financial means" according to section 61.30, Florida Statutes (1997). See id. at 667; Willey v. Willey, 683 So.2d 647 (Fla. 4th DCA 1996). The trial court considered the parties' respective financial circumstances and found that Appellant's net income as an officer in the United States Air Force was in the range of $3,881.00-$4,278.00 per month and his gross annual income was about $70,000.00. Appellee's net monthly income from her employment as a financial analyst was in the range of $1,941.00-$2,374.00, and her gross annual income was approximately $29,000.00. There was no evidence that either party had income other than earned income. The court made a modest downward adjustment in the calculation of Appellant's child support obligation to account for some of his costs of visitation transportation.
A trial court abuses its discretion if no reasonable person could take the view adopted by the court. See Canakaris v. *175 Canakaris, 382 So.2d 1197, 1203 (Fla. 1980). The trial court made findings of fact based on the record to justify its ruling. As reasonable persons could differ over the propriety of the challenged ruling, we find no abuse of discretion in holding Appellant responsible for the visitation transportation expenses. Accordingly, this portion of the final judgment is affirmed.
AFFIRMED in part, REVERSED in part, and REMANDED with instructions.
MINER and BENTON, JJ., CONCUR.
NOTES
[1] Appellant was 39 years old at the time of the dissolution hearing.