BROWNING, J.
Kimberly Ann Fields (“Former Wife”) appeals the trial court’s rulings denying her motions to dismiss the dissolution proceedings, dissolving her marriage to the appellee, David Bruce Fields (“Former Husband”), and refusing to relinquish subject-matter jurisdiction and transfer the case to Washington State. We affirm the final judgment dissolving the parties’ marriage. Concluding that the trial court abused its discretion by refusing to transfer jurisdiction to the Washington State court to consider the other outstanding issues, we reverse and remand with directions to the lower court to transfer the case to Washington State, where the parties and their children and nearly all the witnesses reside in the same general community.
In October 1997, Former Husband filed a petition in Escambia County to dissolve his seven-year marriage to Former Wife. Paragraph 2 of his petition, labeled “Residency,” states that “[t]he Petitioner/Husband has been a resident of Florida for more than six months ... prior to the filing of this Petition.” Paragraph 13 comprises this “military declaration”:
Petitioner/Husband and Respondent/Wife are members of the armed service. The Petitioner/Husband is stationed at NAS, Pensacola, Florida, and the Respondent/Wife is stationed in Iceland with orders 10/31/97 to San Diego, California. The Respondent/Wife is entitled to relief under the Soldiers & Sailors Civil Relief Act of 1940, 50 App. U.S.C. Section 501-592.
Former Husband’s financial affidavit indicated that he was a naval flight officer with the United States Navy; Former Wife’s financial affidavit listed her job as a “clerk” with the United States Navy. He filed an affidavit stating that the parties’ two children had lived with their parents in California (1992-93), in Colorado (1993-95), and in Iceland (1995-96) [1] The older son moved to Pensacola, Florida, with his father in September 1996 to get needed medical and psychological care, while the younger son remained with his mother in Iceland until August 1997, when he came to Florida. Both of the children resided *532 with Former Husband in Florida on the filing date of the petition for dissolution.
In December 1997, Former Wife moved to dismiss the proceedings on the grounds that the trial court lacked jurisdiction over the parties’ marriage. She alleged that Former Husband was a resident of Oregon, although stationed in Pensacola for military purposes; that she was a resident of Oregon too, although stationed in California for military purposes; that the parties never had lived as husband and wife in Florida; that she had never resided in Florida or maintained a marital domicile here; that he had orders to be transferred to a new duty station in California; and that she was stationed in Iceland and had orders to report to San Diego, California.
Former Husband amended his petition in January 1998 to include the following “residency” declaration:
The Petitioner/Husband is active duty with the United States Navy and is stationed in Pensacola, Florida, which allows the Petitioner/Husband to invoke the jurisdiction of this court.
Former Wife filed an April 1998 amended motion to dismiss, citing section 48.193(l)(e), Florida Statutes (1997)[2]; re-alleging the parties’ non-Florida residency, although acknowledging that Former Husband was stationed in Pensacola when he filed the dissolution petition; and alleging that the trial court lacked personal jurisdiction over all matters related to the dissolution action pursuant to McCabe v. McCabe, 600 So.2d 1181 (Fla. 5th DCA 1992) (husband’s service of process on wife in dissolution action was void under Florida long-arm statute, where dissolution petition failed to allege that parties had maintained marital domicile in Florida at the time the action was brought or that wife had resided in Florida prior to commencement of the dissolution action). Her motion also alleged that the trial court lacked subject-matter jurisdiction over the issue of child custody pursuant to the Uniform Child Custody Jurisdiction Act (“UC-CJA”), section 61.1302, Fla. Stat. (1997), et seq., because only one of the two children (the older son) had lived in Florida within the six months preceding the commencement of this action; because neither child would have a significant connection with Florida, given Former Wife’s never having lived in Florida and Former Husband’s pending out-of-state transfer; because another state would have jurisdiction to adjudicate the issues raised in the petition for dissolution; and because it would be in the children’s best interest for a state other than Florida to have jurisdiction. Citing the “inconvenient forum” provision in section 61.1316(1), Florida Statutes (1997), the motion alleged that equity and fairness required the Florida court to decline to exercise continuing jurisdiction where another state was the more appropriate fo *533 rum due to changing material factual circumstances.
At the August 27, 1998, motion hearing, the parties stipulated that Former Husband had been transferred to Washington State and was currently stationed on Whidbey Island, where he lived with the two children; and that Former Wife was stationed as an enlisted E-5 in San Diego, California. Counsel for Former Husband argued that jurisdiction in Florida remained proper because Former Husband and the children had lived here on the date the petition was filed; because Former Husband had intended then to remain in Florida; because neither party could meet any other state’s residency requirements to allow a petition for dissolution to be filed anywhere else; and because the older child’s psychological/medical records and other substantial evidence relating to the children were located in Florida.
In its September 1998 order, the trial court found that it had subject-matter jurisdiction and, thus, was authorized to dissolve the marriage; that under section 61.1808, Florida Statutes (1997), Florida had been the children’s “home state” within the six months prior to the filing of the dissolution petition; and that substantial evidence existed in Florida concerning the children’s past needs that could be relevant to their future care and best interest. The court found that pursuant to section 61.1316, Florida Statutes, through no fault of the parties there was no convenient forum for resolution of the issues of shared parental responsibility and visitation. The court granted Former Wife’s amended motion to dismiss for lack of personal jurisdiction due to her non-Florida residency and her lack of a substantial contact with this state. While the court declined to address any issues relating to alimony, child support, or equitable distribution of property or debt, it agreed to exercise jurisdiction over the issues of dissolution of marriage, child custody, and visitation, absent Former Wife’s consent to add the other issues.
Former Wife filed a January 2000 second amended motion to dismiss, which included new allegations that Former Husband’s orders required him to remain stationed in Washington State through 2002, with the provision that he could seek to remain at that duty station indefinitely; that Former Wife was an Oregon resident currently stationed at the same naval base as Former Husband in Washington State, where she would remain stationed through 2002; that only two of Former Husband’s twelve listed witnesses lived in Florida, while the others all lived in the same Washington State community where the parties lived; that the children’s treating psychiatrists and psychologists and the children’s current schoolteachers all lived in Washington State; that Former Husband’s girlfriend, who was described as “a material and important witness,” lived in Washington State; that the parties’ friends, eo-work-ers, and neighbors lived in Washington State; and that the parties no longer had any significant connections to Florida since 1997. Citing the UCCJA, Former Wife challenged the Florida court’s subject-matter jurisdiction over the issues of child custody and visitation. She sought a transfer of the case to Washington State as a more convenient forum in light of the fact that the parties and the children all resided on the same naval base there. Her motion was supported by an affidavit. The trial court orally found that it still had jurisdiction and that it would be inappropriate to relinquish jurisdiction and to transfer the case to Washington State under the UCCJA’s “inconvenient forum” provision.
*534 After the hearing, the court issued a February 2000 order finding that “given the pleadings before the Court and the history of the case,” it would be appropriate for Florida to retain jurisdiction over the action. The court agreed to consider, inter alia, the issues of the dissolution of marriage, child support, equitable distribution, and attorney’s fees and costs. Thus, Former Wife’s second amended motion to dismiss was denied, and the court refused to transfer jurisdiction. The marriage was dissolved in a separate February 2000 final judgment, in which Former Husband was designated the children’s temporary primary residential parent, and Former Wife was given reasonable visitation. Jurisdiction was reserved over all other issues raised in the pleadings.
Former Wife filed an answer to the amended petition for dissolution. She also moved for a rehearing seeking to vacate the dissolution decree and to have the action dismissed due to the lack of subject-matter jurisdiction. After a rehearing was denied, Former Wife filed notices of appeal challenging the non-final order denying her second amended motion to dismiss, and the final judgment of dissolution of marriage. The two appeals then were consolidated.
Section 61.021, Florida Statutes (1997), states that “[t]o obtain a dissolution of marriage, one of the parties to the marriage must reside 6 months in the state before the filing of the petition.” Compliance with the Florida residency requirement is jurisdictional. See Coons v. Coons, 765 So.2d 167, 169 (Fla. 1st DCA 2000). Generally, “[t]he test of residency is physical presence in Florida and the concurrent intent to be a permanent resident.” Cruickshank v. Cruickshank, 420 So.2d 914, 915 (Fla. 1st DCA 1982); Coons, 765 So.2d at 171. “Whether or not a complainant is a Florida resident is a question of both fact and law to be settled or determined from the facts of each case.” Coons, 765 So.2d at 170; Fowler v. Fowler, 156 Fla. 316, 22 So.2d 817 (1945). After a careful review of the record, we conclude that Former Husband satisfied the Florida residency requirement, and that the trial court properly exercised subject-matter jurisdiction over the dissolution proceeding initially and properly dissolved the marriage. See Mills v. Mills, 153 Fla. 746, 15 So.2d 763 (1943); Coons, 765 So.2d at 167; Bowers v. Bowers, 287 So.2d 722 (Fla. 1st DCA 1974).
The UCCJA “is meant to prevent competing and inconsistent exercises of jurisdiction by two or more states, not to terminate jurisdiction that already has been validly acquired by Florida.” Yurgel v. Yurgel, 572 So.2d 1327, 1330 (Fla.1990). “A custody proceeding properly begun in Florida remains under Florida’s jurisdiction until Florida determines otherwise, unless viHually all contacts with the state clearly have been lost.” Id. at 1332 (emphasis added). In September 1998, the trial court found that there was no convenient forum for the resolution of the issues of shared parental responsibility and visitation. The court agreed to exercise subject-matter jurisdiction only over the issues of the dissolution of marriage, child custody, and visitation. When that ruling was made, Former Husband and the children had lived in Washington State fewer than five months after moving from Florida, and Former Wife was still stationed in San Diego, California. The court’s initial ruling on subject-matter jurisdiction comported with several of the four alternate provisions in subsection (1) of the UCCJA statute permitting Florida jurisdiction:
61.1308 Jurisdiction.-
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody *535 determination by initial or modification decree if:
(a) This state:
1. Is the home state of the child at the time of commencement of the proceeding, or *
2. Had been the child’s home state within 6 months before commencement of the proceeding and the child is absent from this state because of his or her removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state;
(b) It is in the best interest of the child that a court of this state assume jurisdiction because:
1. The child and his or her parents, or the child and at least one contestant, have a significant connection with this state, and
2. There is available in this state substantial evidence concerning the child’s present or future care, protection, training, and personal relationships;
(c) The child is physically present in this state and:
1. The child has been abandoned, or
2. It is necessary in an emergency to protect the child because he or she has been subjected to or threatened with mistreatment or abuse or is otherwise neglected; or
(d)l. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), paragraph (b), or paragraph (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and
2. It is in the best interest of the child that a court of this state assume jurisdiction.
(2) Except under paragraph (c) or paragraph (d) of subsection (1), physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine custody.
§ 61.1308, Fla. Stat. (1997). According to the “Definitions” provision in the UCCJA:
“Home state” means the state in which the child, immediately preceding the time involved, lived with his or her parents, a parent, or a person acting as parent for at least 6 consecutive months or, in the case of a child less than 6 months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6-month or other period.
§ 61.1306(5), Fla. Stat. (1997). Former Wife alleged that only one of the two children had lived in Florida with his father for at least six consecutive months before the petition for dissolution was filed.
We find it significant that after the lower court’s ruling on Former Wife’s amended motion to dismiss, she was transferred from California to the same naval base in Washington State where Former Husband and the children lived. Not only did Former Husband’s and the children’s ties to Florida become ever more tenuous, but also the entire family resided in the same location in another state for the first time since the initiation of the dissolution proceedings. The children attended school in Washington State, and their health-care providers and neighbors and friends were located there too. In other words, the material facts affecting the questions of *536 the proper forum and subject-matter jurisdiction changed significantly by the time the trial court heard the most recent evidence and issued its ruling in early 2000 on Former Wife’s second amended motion to dismiss.
Inconvenient forum is addressed in the following provision in the UCCJA, which states in pertinent part:
61.1316 Inconvenient forum.—
(1) A court which has jurisdiction under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
(2) A finding of inconvenient forum may be made upon the court’s own motion or upon motion of a party or a guardian ad litem or other representative of the child.
(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
(a) If another state is or recently was the child’s home state;
(b) If another state has a closer connection with the child and his or her family or with the child and one or more of the contestants;
(c) If substantial evidence concerning the child’s present or future care, protection, training, and personal relationships is more readily available in another state;
(d) If the parties have agreed on another forum which is no less appropriate; and
(e)If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in s. 61.1304.
§ 61.1316(l)-(3), Fla. Stat. (1997) (emphasis added). The “general purposes” provision in the UCCJA, which is cited in statutory subsection (3)(e), supra, states, in pertinent part:
61.1304 Purposes of act; construction of provisions.— The general purposes of this act are to:
(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in the state which can best decide the case in the interest of the child.
(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his or her family have the closest connection and where significant evidence concerning his or her care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and the family have a closer connection with another state.
§ 61.1304(l)-(3), Fla. Stat. (1997). The standard of appellate review of a trial court’s decision whether or not to find Florida an inconvenient forum is an abuse of discretion. See Reeve v. Reeve, 391 So.2d 789, 791 (Fla. 1st DCA 1980).
Clearly, by the time the trial court heard the latest evidence and made its most recent rulings, Washington State, not Florida, was the only state where the parties and their children had a close and significant connection, and where substantial evidence was available concerning the *537 children’s “present or future care, protection, training, and personal relationships.” See § 61.1308(1), Fla. Stat. (1997). Unlike the situation that existed when the lower court made its earlier ruling, and the parties’ states of residency were in flux, subsequently there was a state other than Florida that would have proper jurisdiction under the prerequisites set forth in section 61.1308(a) or (b). That state is Washington State. The situation in early 2000 was akin to the circumstances contemplated in Yurgel, ie., one where “virtually all contacts with the state clearly have been lost.” Yurgel, 572 So.2d at 1332. Given the dearth of current relevant evidence in the record to support retaining jurisdiction in Florida, and the substantial amount of evidence available in Washington State, we conclude that the trial court abused its discretion under the UCCJA by failing to relinquish jurisdiction and to transfer the case to Washington State.
Accordingly, while AFFIRMING the final judgment dissolving the marriage, we REVERSE and REMAND the other challenged order with instructions to the trial court to transfer jurisdiction of the case to Washington State.
KAHN and LEWIS, JJ., concur.

. Andrew was bom in March 1991, and Bryce was born in March 1993.

. This section of the statute states:
48.193 Acts subjecting person to jurisdiction of courts of state.—
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
[[Image here]]
ie) With respect to a proceeding for alimony, child support, or division of property in connection with an action to dissolve a marriage or with respect to an independent action for support of dependents, maintaining a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. This paragraph does not change the residency requirement for filing an action for dissolution of marriage.